**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ANTHONY D'ACQUISTO, LARRY KAU,**
**and WILLIAM MILLER,**
        **Plaintiffs,**

    v.                                              **Case No. 05C0810**

**ALEXANDRA TRIFFO, and**
**S. RUSSELL CHAMBERLAIN,**
        **Defendants.**

---

## DECISION AND ORDER

On July 28, 2005, pro se plaintiffs Anthony D'Acquisto, Larry Kau and William Miller brought this diversity action against defendant Alexandra Triffo, alleging that she took money from plaintiffs in return for shares of stock but failed to deliver the shares of stock. Defendant proved quite elusive, and on January 6, 2006, after plaintiffs exhausted all avenues of attempting service on defendant under the relevant United States and international law, I granted plaintiffs' motion to allow alternative service. Plaintiffs filed a return of service in August 2006 showing that they served defendant by leaving a copy of the summons and complaint at her sister's house with her sister, by mailing a copy of the summons and complaint to defendant's last known address, and by sending a copy of the summons and complaint to her email address. Defendant still has not appeared in this action. The clerk made an entry of default against her on August 22, 2007, and plaintiffs now request entry of judgment.

I will first address jurisdiction. As to subject matter jurisdiction, this action falls within the realm of diversity jurisdiction. Plaintiffs are citizens of Wisconsin and Michigan, and

defendant is a citizen of Canada; thus, complete diversity of citizenship exists. 28 U.S.C. § 1332(a). Additionally, the amount in controversy pled in the complaint exceeds $75,000 for each plaintiff.[1] Id.

Regarding personal jurisdiction, the Seventh Circuit has not yet decided if "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case." e360 Insight v. Spamhaus Project, 2007 WL 2445016 (7th Cir. Aug. 30, 2007) (quoting Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir. 1997). To be thorough, I will address it anyway. In determining whether personal jurisdiction exists, I may rely on the complaint, affidavits, deposition testimony, exhibits or other evidence in the record, Schimpf v. Gerald, Inc., 2 F. Supp. 2d 1150, 1160 (E.D. Wis. 1998).

In diversity cases, a federal court has personal jurisdiction over the parties only if a court in the state in which the federal court sits would have jurisdiction. See Fed. R. Civ. P. 4(e); see also Dorf v. Ron March Co., 99 F. Supp. 2d 994, 996 (E.D. Wis. 2000). Therefore, I first must decide whether defendant is subject to personal jurisdiction under Wisconsin's long-arm statute and, if so, whether exercising jurisdiction under the statute is consistent with the due process requirement of the Fourteenth Amendment. Dorf, 99 F. Supp. 2d at 996.

Under Wisconsin's long-arm statute, Wis. Stat. § 801.05, a Wisconsin court may exercise two types of jurisdiction over a non-resident defendant, specific jurisdiction and

---

[1] Plaintiff D'Acquisto seeks almost $600,000 in damages, plaintiff Kau seeks over $80,000 in damages, and plaintiff Miller seeks nearly $200,000 in damages. Alternatively, plaintiffs seek a return of their purchase money, plus interest.

2

general jurisdiction. Specific jurisdiction exists when the litigation arises out of or is related to the defendant's contacts with Wisconsin. Wayne Pigment Corp. v. Halox, 220 F. Supp. 2d 931, 934 (E.D. Wis. 2002). General jurisdiction requires that a defendant have more substantial contacts with Wisconsin but authorizes a court to entertain any action against the defendant regardless of its subject matter. Id. at 933.

In the present case, I have specific jurisdiction over Triffo based on Wis. Stat. § 801.05(5)(c), which confers jurisdiction over a defendant in any action which "arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value." In this case, the claims arise from defendant's promise to deliver to Wisconsin, and to plaintiffs, the shares of stock, and thus section (5)(c) of Wisconsin's long-arm statute confers jurisdiction.

Turning to due process requirements, Wisconsin courts presume that compliance with the Wisconsin long-arm statute satisfies due process. Wayne Pigment Corp. v. Halox, 220 F. Supp. 2d 931, 935 (E.D. Wis. 2002). Due process permits a Wisconsin court to exercise jurisdiction over a defendant who has minimum contacts with Wisconsin consistent with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant must have purposefully established the contacts and "availed itself of the privilege of conducting activities" within the state, such that the defendant could reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985). And with cases involving specific jurisdiction, the claim must arise out of the contacts with Wisconsin. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In this case, defendant's contacts with Wisconsin are enough to meet due process requirements, and plaintiffs' claims arise directly from those contacts. Defendant traveled to Wisconsin and conducted a presentation that caused plaintiffs to send money for the purchase of stock which they never received. Defendant therefore purposefully availed herself of the privilege of conducting activities in Wisconsin and could reasonably anticipate being haled into court in Wisconsin because of her activities within the state.

Having concluded that jurisdiction is proper in this matter, I now turn to the request for default judgment. Upon the clerk's entry of default, "the well-pleaded allegations of a complaint relating to liability are taken as true." Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983). The Clerk of the Court has entered default against defendants in accordance with Federal Rule of Civil Procedure 55(a). Thus, the following relevant allegations relating to liability are taken as true. Defendant promised to deliver shares of GEC stock to plaintiffs in exchange for their money, but never intended to follow through on the promise. Reasonably relying on defendant's statements that plaintiffs would receive shares of stock, plaintiffs sent checks in varying amounts which were subsequently cashed. Defendant never delivered the shares of stock as promised.

Plaintiffs' complaint alleges three causes of action against defendant: fraud, breach of fiduciary duty and conversion. It is unclear whether plaintiffs have a claim for breach of fiduciary duty, as Wisconsin law does not impose fiduciary obligations upon investment brokers who operate at the direction of their clients. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck, 127 Wis. 2d 127, 133-34 (Wis. 1985). The complaint does, however,

4

adequately allege claims for fraud, in the form of intentional misrepresentation, and conversion.

Under Wisconsin law, the elements of intentional misrepresentation are as follows: (1) the defendant made a representation of fact; (2) such representation of fact was untrue; (3) such representation was made by the defendant knowing it was untrue or recklessly without caring whether it was true or false; 4) the representation was made with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage; and 5) the plaintiff believed such representation to be true and relied on it. Digicorp, Inc. v. Ameritech Corp., 262 Wis. 2d 32, 55 n. 10 (Wis. 2003). In this case, plaintiffs claim defendant knowingly misrepresented the fact that she would deliver shares of stock to plaintiff, she made this misrepresentation with the intent to deceive plaintiffs and to induce them to send money, and plaintiffs' reliance on the truth of her statements caused them to lose money. These facts support a claim of intentional misrepresentation.

Likewise, the complaint states a claim for conversion. "Conversion is often defined as the wrongful exercise of dominion or control over a chattel. Conversion may result from a wrongful taking or a wrongful refusal to surrender property originally lawfully obtained." Production Credit Ass'n of Madison v. Nowatzski, 90 Wis. 2d 344, 353-54 (1979). Generally speaking, plaintiffs claim defendant fraudulently obtained possession of their property and to date has not returned it, thereby wrongfully depriving plaintiffs of the property. These facts support a claim of conversion.

I now turn to damages. Plaintiffs seek one of two alternative forms of relief: either a refund of their purchase money–what amounts to a rescission–or expectation damages for the profit they would have made from the shares of stock. I believe the first remedy to

5

be the more appropriate under Wisconsin law, where the Wisconsin legislature has enacted a statute that specifically addresses remedies available to victims of fraud in a stock purchase. Wis. Stat. § 551.59. That provision states that the primary remedy for someone defrauded in the purchase of stock is rescission, by which an individual may recover the price paid for the stock plus interest from the date of payment, in exchange for return of the stock to the seller. Id. The damages remedy mentioned in that provision is secondary and is only utilized if rescission is impossible–that is, where the victim of the fraud no longer has possession of the stock for tender to the fraudulent seller. Id. In this case, defendant retained control of the stock, and rescission therefore only requires a return of the purchase price; the "tender" of the stock is, in effect, complete. Thus, analogizing to the Wisconsin statutory scheme governing securities transactions, rescission is the appropriate remedy in this case.

The burden is on the plaintiff to prove damages for default judgment with sufficient documentary evidence and detailed affidavits, Dundee Cement, 722 F.2d at 1323, and, here, I believe plaintiffs' evidence sufficiently supports the rescission remedy. Plaintiffs have provided affidavits and copies of checks paid to defendant for the stock, which adequately supports the purchase amounts claimed.

As to the specific amount of damages, plaintiffs allege the following. Plaintiff D'Acquisto paid $75,240 to defendant for the stock which he never received. Plaintiff Kau paid $10,738 to defendant for the stock which he never received. Plaintiff Miller paid $25,000 to defendant for the stock which he never received. Plaintiffs have provided affidavits and documentation sufficient to support these amounts. As such, I will enter

6

judgment in favor of plaintiffs in the above amounts without further ado.[2] Additionally, the Wisconsin statutes cited above support the award of prejudgment interest in this case, as does Wisconsin caselaw, since the price paid by each plaintiff was a fixed and determinate amount that was readily ascertainable, see Bigley v. Brandau, 57 Wis.2d 198, 208 (Wis. 1973) (stating that prejudgment interest is appropriate as a matter of law where damages are liquidated). Wis. Stat. § 551.59 provides for interest from the date of payment as set forth in Wis. Stat. § 138.04, which allows for interest at the rate of 5% per annum. For D'Acquisto, the payment date is August 3, 1999. For Kau, it is July 19, 1999. For Miller, it is August 4, 1999.

**Therefore,**

**IT IS ORDERED** that plaintiffs' request for entry of default judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment against defendant in favor of plaintiff D'Acquisto in the amount of $75,240, plus prejudgment interest at 5% per annum from August 3, 1999; in favor of plaintiff Kau in the amount of $10,738, plus prejudgment interest at 5% per annum from July 19, 1999; and in favor of plaintiff Miller in the amount of $25,000, plus prejudgment interest at 5% per annum from August 4, 1999; and in favor of plaintiffs for postjudgment interest and costs as allowed by law.

---

[2] I note that the amounts actually recovered in this case, as to plaintiffs Kau and Miller, are less than the minimal jurisdictional amount stated in 28 U.S.C. § 1332. However, the plaintiffs adequately pled the minimum amount in the complaint. The fact that, for the reasons above, they did not recover that amount does not deprive the court of jurisdiction. See Rosado v. Wyman, 397 U.S. 397, 405 n.6 (1970).

Dated at Milwaukee, Wisconsin this 10 day of March, 2008.

      /s                                  
LYNN ADELMAN
District Judge

8

Case 2:05-cv-00810-LA   Filed 03/10/08   Page 8 of 8   Document 40